May it please the court, I am Richard Kralhommel. I hail from Raleigh, North Carolina, and I represent the defendant, appellant Xavier Earquhart. This is the case involving the district court's removal of a criminal defendant from his sentencing hearing for unruly behavior without warning. And the issue for the court is whether or not that's a violation of federal criminal rule procedure 43 and whether it warrants reversal for resentencing. The defendant contested it does pursuant to a case called the United States v. Lawrence, which was decided by this court in 2001. To be fair, there are some differences between Mr. Earquhart's case and Mr. Lawrence's case, but there are many similarities, too. Basically, both were removed from their sentencing hearings without warning for disruptive behavior, and both were videoconferenced into the hearing after that. Although the defendants did not have the ability to speak, they simply watched the proceedings on a monitor after they were removed. The major differences between the two cases are that Mr. Lawrence was removed from his entire hearing ahead of time. His was a resentencing hearing following a remand from this court, and he had exhibited disruptive behavior at prior hearings. And so his district court judge said, I'm not allowing you to be physically present at the resentencing hearing. He was incarcerated in a federal prison in Colorado. The sentencing hearing took place in Columbia, South Carolina. The district court allowed one attorney to be present with him in Colorado and the other attorney to be present in the courtroom for the resentencing hearing. And there was video feed in which Mr. Lawrence watched the proceedings, and it was also said in a way that Mr. Lawrence could stop the proceedings and consult with his attorneys at any point. This was done ahead of time, and so Mr. Lawrence's attorneys objected. They had the ability to object, which is the next major difference with Earquhart's case. There was an objection by Lawrence, whereas Mr. Earquhart did not register an objection on the record of being removed from the courtroom. Well, the major difference is, I think what you just said, that they at least had some warning that Mr. Lawrence was going to observe the hearing by video conference. Here, I assume your argument is that there was no warning at all. Is that right? Right. No warning whatsoever. And it was in the middle of the proceedings, so the attorneys may have been caught off guard. So does that alone, just no warning at all, does that alone always require, are you arguing that that should always require us to vacate and remand? I am, Your Honor, yes. Because in Lawrence, this court parsed Rule 43 extensively, and in the end, towards the end of the opinion, the court wrote, warning is an integral part of the rule, as well as to the constitutional underpinning of the rule. And it cited the Illinois v. Allen case, the United States Supreme Court case. And then just a little below that, it writes that essentially, Rule 43 codified the ruling from the Illinois v. Allen case, that there has to be warning before you remove a disruptive defendant from a proceeding. And so, yes, I am agreeing with you on that. The defendant has to be warned, period. And that's our argument. Can we automatically reverse if not? Yes. Okay. That's a view. Because that's the rule, and it's codified from the United States Supreme Court decision. It has constitutional underpinnings. Then why do you say in your brief that we review, that the standard of review is abuse of discretion? Well, that's what the case law says. That seems at odds with just automatically wrong. It does. I mean, I agree with you. It does. So you assess, okay, well, did the district court judge here exercise any discretion before making this decision? I mean, I guess you could say the defendant was being unruly, he was being disruptive, he wouldn't sit down and shut up, he wouldn't address the point the judge wanted him to make, and the judge had him moved. Well, first he had him sit down, tried to have him sit down. Correct. And that's the government's argument, is that the district court's actions were tantamount to a warning, which I would disagree with. There was no affirmative statement. Hey, continue, I'm going to remove you from the proceedings. It was just sit down, let your attorney speak, have a seat, Mr. Marshall, seek him. There was never any statement, hey, Mr. Urquhart, if you don't stop, I'm going to remove you from the court. And in Lawrence, you said there was an objection, and here there was no objection. So why shouldn't it be a plain error review? So my understanding is that plain error is generally limited to evidentiary issues and jury instruction issues, but I guess it could be plain error. But as we pointed out earlier – Can I ask you about that? So one of the purposes of the plain error rule is to – because we want parties to bring the issue to the attention of the district court. And here, in a fairly unusual set of circumstances, it was brought to the attention of the district court, not by the defense lawyer, but by the prosecutor. I agree. So why should we apply the plain error rule? So that's a good point. There was an objection, really, and it was by the government. The government objected. I think they were right to do so. I think you need to warn him before you remove him, and the judge said, I did at first, and then the government persisted, and the judge said, move on. So I think there was an objection. There wasn't pointing out to the court, hey, there's an error here, Judge. You need to correct. So maybe that – I think that's the better argument, that it shouldn't be a plain error under that situation. So in terms of the government argument, the government made two arguments. It said, basically, the judge's interactions with the defendant were tantamount to a warning, and then even if you disagree with that, there's no prejudice here. The defendant hadn't shown how things would have been different had he been warned before his removal. But I disagree with that. I'm not sure you made this argument, but I guess there's an argument that the reason you have, you want to be sure the defendant is there, is so the defendant can allocate. Right. He can give the court his view of things. And the defendant in this case was certainly given that opportunity. So I guess if you're looking at whether the error here, and I agree with you, I don't know that plain error is the standard, but if the regular error here requires reversal, if the defendant has already gotten the benefit of everything that he would get, that is allocution, and he had pretty extensive allocution, then why was this error requiring reversal? So my answer to that is that the defendant was removed from the most important part of the sentencing hearing, which was the rendering of the sentence itself. Right, but he'd given some arguments about that, right? Right. And so when you look at the reasons for that in-person sentencing, for example, one of them I read in one case was to prevent the judge from becoming psychologically detached from the defendant when issuing. This judge was not psychologically detached. I think we can say that with a fair amount of confidence. That's one reason. Allowing the defendant to have an immediacy and in-person observation of what he's about to receive, allowing victims some immediacy, in-person immediacy to what's going on in their lives, and allowing the defendant's family and friends some in-person immediacy to what's going on in their family members' lives. Now, when you say that the only thing left was the announcement or pronouncement of the sentence, I wonder if that's not exactly correct, because what the judge was interested in, the district court was interested in, was hearing from the defendant as to the sentence and any mitigation that he would proffer in the allocution. But this defendant was hell-bent on making legal arguments, jurisdictional arguments. He didn't, the judge kept trying to focus his attention on the purpose of allocution, that is to speak to the court about what the appropriate sentence should be. And so the question really is, I think, whether or not he was actually, whether, in fact, he was given that opportunity, given the fact that he wasn't warned that he would be removed, and if we think that he hasn't, whether it's reasonable to assume on this record that he was never going to allocute in the way that the district court was suggesting he should. Addressing your last point first, I don't think it was reasonable on this record to suggest that he would never allocute. I think what the judge could have, the judge could have saved this by, after the government made its argument on what the sentence should be, and before he rendered his sentence, said to the defense attorneys, okay, go into the holding cell, talk to Mr. Urquhart, see if he's willing to allocute or if there's anything he wants to address before I render a sentence. I think that would have gone a long way towards saving this problem. But that didn't happen. And so the judge removed him without warning, let the government argue, and then rendered a sentence without readdressing the situation to see if Mr. Urquhart understood, hey, this is the consequence if you continue to argue this subject matter jurisdiction issue. Have you changed your mind? Do you want to come out and tell me why I should give you a lower sentence? And that didn't happen. So I think that's the main problem there. So that would be my response to that. Can you talk to us about the million-dollar gross receipts from financial institutions? Or don't you have anything to say about that? I'm sorry? You don't have anything to say about that? Well, I hadn't researched it all that much. Well, that's the second. There are two arguments in your brief. Right, I understand that. And that's the second one. Right. My second argument on the – Because if there was error there, isn't it so? If there was error in that calculation, we would send this back for resentencing. And the whole issue of whether he had to be there, he would be there at the resentencing. We would make it clear you're supposed to give fair warning if you remove somebody. So it seems to me that this issue might be very helpful to you. Right, yeah. And I agree. And we're sticking by that issue. And he made this argument in trial court. Right. It's not a plain error standard. It's whether or not the district court properly addressed these receipts and whether or not it properly ordered the correct amount of restitution in this case. And so, I mean, my argument is the same as it would be that I wrote in my brief. If you don't want to say anything about it, fine.  But I think if the court has questions about that, I'm happy to address them. Well, if I understood the argument, it was that you seem to be suggesting that because the third-party purchases in this case ultimately – the funds were ultimately diverted from them, that somehow that isn't enough to implicate the financial institutions. But if I understand this record correctly, the financial institutions had these liens on the property. And my understanding of the record is that the liens themselves, even putting aside the amounts paid by the third-party purchasers, that the liens themselves were over a million dollars. And so that amount would seem to support the result even if you don't look at the third-party purchases. So what's your view of that record? Well, our view is, as I wrote in my brief, that those remaining victims listed in the pre-sentence report were not financial institutions. Well, the financial institutions in this case had these liens on the property, which your client falsely entered documents into the record suggesting that they were satisfied. And that's not – I mean, that obviously is fraud. And so in that sense, they were – those interests of the banks and institutions were diverted. They had these liens. They were extinguished. And if I did my math correctly, understanding that most of us anyway went to law school to avoid math, that those amounts are over a million dollars. So the end result is a wash. It doesn't – whether you look at the third-party purchasers or the banks, the amount of harm in this case was essentially the same. And so the enhancement would seem to apply regardless of how you look at it. So that's the argument, is that it's a statutory construction argument and it says financial institutions. And if you look right at it, Mr. Urquhart is saying those other victims are not financial institutions and you can't count their losses. I don't know – I mean, I get your argument that, hey, they are tantamount to financial institutions. It's not an argument. It's just a statement. You can agree or disagree. Right. I get your position that these are tantamount to financial institutions and they suffered losses. And when you bring in their money, you get more than a million dollars. But Mr. Urquhart respectfully disagrees and says they're not financial institutions. They don't come under the purview of the statute. Fair enough. That's it in a nutshell. There's really nothing more to it than that. Right. So if there are no further questions, the yellow light's on, and I'll cede the stand to opposing counsel. Thank you very much. Boy, oh, boy, oh, boy. Here's your favorite. Good morning. May it please the Court. Christine Fritz on behalf of the United States, asking this Court to affirm the judgment of the District Court. I'd like to first address the issue about Rule 43 because I think that that is the issue that concerns this Court the most, reasonably. I noted in preparing for oral arguments... And it concerned the government in sentencing. It did. And I wanted to first address the standard of review issue because I noted that was listed on the Court's discussion of what was going to be talked about here. And I'd just like to clarify that insofar as the contention, that generally the standard of review for removing a defendant is a broad abuse of discretion. The Court has the discretion to control its courtroom. Because we presented and we raised the issue of Rule 43, we think that that is sufficiently before the Court in this case. We did raise that issue. I appreciate that the defendant and defense counsel didn't specifically say, yes, we agree, Rule 43. So you're not claiming plain error. We're not claiming plain error as to Rule 43. But I do think that whether a due process violation as to allocution or as to the continued presence and involvement, I do think that that is potentially different. And the Court might be inclined to look at that as far as plain error because at no point did the defendant or defense counsel say, you have abused me of my opportunity to allocute. And that's because the record makes very clear that the Court was very interested in hearing his allocution if he wanted to speak to that. But overall, under any standard of review, we don't think that what happened here is reversible error with respect to the defendant's removal from the courtroom. I agree with my colleague below who said that he was concerned that an explicit unambiguous warning had not been provided in terms of, if you persist in this vein, you will be removed. I'm not going to stand here before the Court and suggest that something like that occurred here. But if that level of specificity is required, that level of being explicit is required to comply with Rule 43, it's harmless here. And so I would direct the Court's attention to... Well, what level of warning is required under Rule 43 before the defendant is removed from the courtroom in the government's view? Honestly, in conducting my research, I hadn't found much discussion of how nuanced, how explicit, how detailed a warning has to be. And that may well be because it's often more clear that the Court will say, I'll remove you. In this particular case, I do think that what happened here is effectively or tantamount to a warning, but I think that that perhaps comes more into play with my argument that it's not a reversible error. But see, I mean, I hear you on that. I mean, I think it was error, and I think the question is whether it's reversible or not. And I came up with the best argument I could figure out, which was the allocation argument. But I think Judge Diaz makes a fair point because the guy wasn't put on notice that this is it. He certainly knew that the judge wasn't buying his jurisdictional argument. Certainly knew that. There's no question about that. But... what he's supposed to do is to give me reasons in his allocution why I would sentence less than the government might want. But I'm not sure that the defendant knew that, because not only did he not really get a warning, he didn't get any, like, you know, I don't want to hear about... He certainly got, I don't want to hear about jurisdiction. I think that what the rules, what the procedural rules and also what due process requires is that a defendant be afforded an opportunity to allocute. And I think that he absolutely got that here. When you look at what the court says, when the defendant keeps talking, and this is probably starting around 768, you know, I'd be glad to hear you on anything you want to say in mitigation of the judgment of the sentence I'm going to give you. That's the purpose of this opportunity. The defendant continues pushing back, wanting to talk about jurisdiction, and eventually, and also he is pushing back about how he has a First Amendment right and you can't stop me from speaking. You can make me sit down, but you can't stop me from speaking. And during this period of time, the court is attempting to explain to him that the right you have right now is to speak in mitigation of your sentence. And 771, I would like to give you an opportunity to speak in mitigation of the sentence that you're about to receive if you have anything you want to say in that regard. Otherwise, he's interrupted. Otherwise, I'm ordering you to be quiet. The court appreciates that this is an opportunity. He is going out of his way to make sure to redirect this defendant to ensure that he does have the effective opportunity to use his time before the court to allocute. What is the education range of this defendant? He is actually relatively educated. He obtained his GED. He also attended some college. And quite frankly, he engaged in a relatively sophisticated financial fraud. It's also clear from the sentencing transcript, and I think at one point the court says it's obvious that you honed up on Rule 32. So I think that this is a defendant who was intelligent and was presented with a judge who really was trying to redirect him and get him to focus and make sure that he was afforded every opportunity to say his part in mitigation of the sentence. And the defendant repeatedly abused that opportunity. And to the extent that there is some concern... Do you think if you don't have a non-disruptive defendant and the judge says, this is your opportunity to allocute, the defendant says, I don't have anything to say, but a few minutes later, right before the judge is about to enter a sentence, the defendant changes his mind and says, Your Honor, I'd like to speak. Would the district court be bound to honor that? I think that... Yes, I think that under... So what's the difference in this case? I think that where a defendant has expressly requested an opportunity to speak in mitigation and the court denies it, that's a problem. Okay, so how do we know that would not have happened here? Well, I think that we know that would not have happened here in that the court repeatedly was allowing him to allocute. But in my scenario, the court has told the defendant, you have an opportunity to allocute, and he declines, he or she, and then changes his or her mind. Now, this is different, I guess, in the sense that you're right, he was repeatedly told about his right. But I guess what I'm asking is sort of the timing of this is all in the context of the failure of the district court to tell the defendant that you're going to be... I'm going to kick you out if you don't comply with my directives. And at that point, he has no opportunity to change his mind. I think that the situation that you've posited, you're hypothetical with a defendant who is not unruly, who initially says, no, I'm not interested in allocuting, and then changes his mind. I just think that's very different than a defendant who has repeatedly been afforded the opportunity to allocute and squandered, deliberately disregarded the court's attempt to redirect and squandered. I think that at some point, you have lost your right to allocute. How about this one? Okay, let's say this defendant, he's being belligerent, he keeps refusing to allocute, and then the judge says, that's it, I'm not hearing from you anymore. And then the defendant says, oh, wait a minute, I changed my mind, I do want to allocute. Here's what I want to say about the sentence. And the judge says, sorry, too late. What about that? Well, I can see you in a single instance, like if it was just that. But again, here we have repeatedly the court saying... No, no, no, this is this scenario. Let's say he's repeatedly refused to allocate in the way that the district court has suggested he should. But in this case, he's not being kicked out of the courtroom. He's been told to sit down and be quiet. And then after talking to his lawyer, he gets up again and says, Your Honor, I apologize, I do want to say something about the sentence. And the judge says, you've had your opportunity, sit down. I think that that would be a question of whether the court appropriately exercised his discretion in that case in perceiving the defendant's conduct. Well, yeah, that is a question. What's the answer? In that case, I think that a court might be within its discretion to say, No, I've afforded you the opportunity to allocate. You've repeatedly abused that. And I don't believe that you're going to be able to fulfill the role that's afforded to you right now. You know, I understand. This is a difficult position to be in. And I don't know that that would be the answer that I would give to you. But I suppose... I think also all of these things are so very fact-dependent. And turning to the facts of this case, I think there are a number of reasons why this court can be confident that the defendant's substantial rights were not affected by any lack of an explicit warning. And I think, first of all, I would point the court to these... I just don't see any warning. And your argument seems to be erasing the part of Rule 43 that says when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, comma, but they persist, then you can remove them. So I see the persistence, but I don't see the warning. And I think that if the... And neither did the government. Yes, but in response to that, it does seem that the court was under the impression that what it had done was sufficient to the warning. But it seems that the court was angry. That might be possible. But I actually think that the court was remarkably patient with this defendant throughout this sentencing hearing from the very beginning. And I'd ask you to look at the whole of the sentencing hearing in addition to that last portion because, again, the defendant, from the beginning, was repeatedly interrupting the court, effectively misrepresented whether or not he had received these PSRs. The court had to often say, you're going to have your term to speak. I completely agree the defendant was disruptive. Yes, and... But in order to remove a disruptive defendant pursuant to the rule in the case law, there has to be a warning. Well, and I suppose that I think that the strongest argument from the government is that a violation of Rule 43 in this context does not amount to reversible error. And then that's where Harmless Error 52A comes into play. And the reasons why I think this is harmless are... There are multiple. First is this idea that there were progressive efforts to discipline. And I think that when you look at that in its entirety, it was conveyed that continued recalcitrance would have more and more severe consequences. I agree with you that that's not an explicit warning. If you continue this, you're out of here. But I think that that should at least factor into the court's evaluation of whether this was harmless. Added to that, after this progressive discipline resulted in his removal from the courtroom, I'd like the court to look at the first thing that this defendant is heard saying from the holding cell is, I sure hope he wants to talk about jurisdiction now. To me, that would suggest that this defendant, had he received an explicit warning that you will be removed, that you'll be removed if you persist in making motions that the court has explicitly told you have been ruled upon and that it was not going to hear, an explicit warning would not have caused him to change his conduct. But I think it also indicates, going back to Judge Diaz's suggestion, that he was not focusing on the fact that this is his one and only opportunity to say something that would get the judge to lower his sentence. But I don't think that that was any shortcoming of the court's part because the court repeatedly said, this is your opportunity to speak. The only right to speak you have right now is to speak in mitigation of your sentence. The fact that the defendant was fixated on jurisdiction and unwilling to follow the court's instruction, there was very little the court could have done to prevent that. I mean, can we switch gears just for a minute to talk about this million dollars in gross receipts? Absolutely. Okay. With respect to the million dollars in gross receipts, the jury specifically did find that this defendant personally received proceeds well in excess of a million. First, there were two bank fraud schemes here. Just talk about the big one. The big one, yes. And the proceeds from that scheme alone were sufficient to satisfy the million dollars of gross receipts. The language that I am focused on is that the sentencing that the... At one time, I'm trying to figure out in my own mind whether this is a guidelines or a statute, talks about an offense which affected a financial institution and the defendant derived more than a million dollars in gross receipts, sentencing guidelines. In 2001, that was amended and changed to be, in the newest version, the gross receipts are to be derived from the financial institution. In response to that, virtually every circuit court that has considered this question has said that the enhancement only applies when the financial institutions are the source of the gross receipts. Going on to say, the amended language makes it clear that the enhancement only applies if gross receipts in excess of a million dollars are derived from the financial institution. Under this language, the only effect on a financial institution that counts is money laundering from a financial institution into defendant's coffers. Another court, enhancement applies where a financial institution suffers some type of loss or liability to providing the requisite funds. So that's what I wonder, and it seems to me that those cases would not have supported the government here. With respect to these cases... I mean, government makes nothing of this change. I mean, it doesn't acknowledge it. You quote the correct guideline, but you don't suggest that there's any change in the law, right? Well, that's true. I don't think that we explored that change in the law, either on appeal or in the district court. But the whole... Maybe it doesn't mean anything, but just tell me why it doesn't. Because all of our sister circuits seem to think it was. I think that in most of those cases, it was dealing with a more traditional bank fraud, where you lie to the bank and you get the money directly from the bank. So that would be 1344, like the subsection 2 of the bank fraud statute. Here, what we charge for the second scheme is that the defendant... No, they're relying on the sentences, sentence and language in the sentencing guideline, which applies here, right? Yes. You say it applies here. Yes, and our point is that what the defendant obtained from these... In these cases, these banks were absolutely themselves harmed. They had secured interest in these properties, but the defendant extinguished. So the defendant obtained, through the hormonal foreclosures, obtained a title on the property. At that time, he had an encumbered property that was subject to the lien of the bank. And so certainly that would have affected the financial institution. There's no doubt about that. So you've been fined under the previous guideline. But I just don't understand how you can say the gross receipts are derived from the financial institution in light of all of this language talking about how direct this has to be. With the way it was charged, it absolutely was direct because we obtained... This defendant obtained... extinguished the bank's security interest and obtained unencumbered property. And gross receipts is defined as very broadly. It includes all property, real or personable, tangible or intangible, which is obtained directly or indirectly as a result of such offense. Our position is that this defendant obtained an unencumbered piece of property by extinguishing a secured interest that the bank had. He took that from the bank, made it his own, and then he resold it to unsuspecting third-party purchasers. Okay, so how is affected different than this language then? I think that in this particular scenario, it isn't different because the defendant took an interest of the bank, which was the collateral. Which affected the bank, for sure. I mean, it was the collateral, and I think that when I looked at the closing arguments of our government counsel, he explained how you steal a house. You do what the defendant did here. You steal it on property. He took this bank's financial interest, all of these financial institutes. There were, I think, seven of them for this case. He took their interest, got rid of it, made that collateral his own, and resold it. So this isn't like the case where, I think Sandlin is one of the ones that was, I'm sorry, Hudgens, where a bank was just used as a pass-through for fraudulently obtained money. That's not what we have here. What we have is a defendant who has taken, directly or indirectly, real or tangible or intangible property from the bank. And to suggest that this mean is not something of value, it clearly is. There's a secondary market. There's a reason why these banks maintain an interest. And you can't, he effectively stole the houses, stole the collateral from the banks, and resold it. And we think that in placing a value on what was taken, what the defendant received through his offense, you can look at either the amount of the mortgages that were extinguished or his ability to resell this property. All that is true. I think like we're ships passing in the night. What I'm trying to focus on is the difference between affected financial institution and derived from the financial institution. And there's nothing that you've said to me that has helped me make that distinction because when the Sentencing Commission changed the guidelines, they obviously intended a change. When our sister circuits have looked at the new language, they have said there's a change. So what I'm asking you is, so what is the change if it's not the one I posit? And I suppose in this case I don't, I think that the unencumbered property was derived from the offense where he defrauded. So if the language was directly derived from, I mean, what more would they have to do to make a change in your point of view? I think that it was,  No, you can answer the question. I think that it was perhaps in response to cases like Hudgens where initially a bank was just being used as they passed through a conduit for monies that had been defrauded from someone else. And the bank was affected in that it was involved in it. Did you look at the, did you, were you aware of this change? No, and that wasn't something that was well developed. And so you haven't, when you're suggesting this, you're just going sort of on your general knowledge and good for you. But you haven't looked at some commentary that says this? No, I haven't looked at the amendment that made this change. But I would submit that this defendant did derive gross receipts exceeding a million dollars in the second fraud scheme alone. He has to derive from the financial institution. I'm sorry. That's all right. Thank you. And we'd ask that you affirm the judgment. Thank you. You don't have to address this. I know you didn't. Nobody seemed to be interested in this issue. You can address the first issue. Isn't that what you want to address? Yes, Your Honor. In response to Judge Diaz's question about the, if the defendant were given an opportunity to allecute and he didn't, and then he later changed his mind and the judge said, no, I've given you an opportunity. We're done. Would that be error? My response is yes, it would be error. Per the Ashby, North Carolina case I cited in my brief at the bottom of page 23 and top of page 24, which held that when a defendant effectively communicates his desire to the trial judge to speak prior to the imposition of sentence, it is a denial of due process not to grant the defendant's request. So I would say that it is error if the defendant changes his mind. So that gets back to my hypothetical that I presented earlier where, hey, if the district court judge had said to the defense counsel, go in and talk to him, see if he's changed his mind, then there effectively would have been a warning because the judge has given him a chance to come back out and allecute. And if Mr. Urquhart says, no, I just want to talk about the jurisdiction issue, and the judge says, okay, well, then I'm not bringing you back out, then Mr. Urquhart really has no argument. He has no Rule 43 violation to the claim because the judge would have corrected his problem. I would also like to mention that if there's a chipping away at Rule 43, it's going to create more litigation. Now, say, for example, the objection issue. If you say, okay, Mr. Lawrence objected, but Mr. Urquhart did not object, so we're not giving Mr. Urquhart relief on appeal. My response to that would be, if that rule were already in place prior to Mr. Urquhart's case coming on, I would have argued an effective assistant counsel for his defense counsel not objecting and saying, hey, don't kick him out yet. Let's give him a chance to allecute. And so, you know, I just beg the court not to chip away at Rule 43 and say, okay, we're going to create some exceptions where you can violate Rule 43 and still not have reversible error. If he's removed from the courtroom without warning and he's not given a chance to come back in, I think it's reversible error requiring re-sentencing. So I'd ask the court to so forth. If there are no questions, that's all I have. Thank you. We will come down and greet the counsel and go directly to the next case. Yes.
judges: Diana Gribbon Motz, Albert Diaz, Stephanie D. Thacker